# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **VS.** | **)** | **DOCKET NO. 2:23-cr-00027-GZS** |
| | **)** | |
| **TYSON DYER** | **)** | |
| | **)** | |

## MOTION TO DISMISS

NOW COMES Defendant Tyson Dyer, by and through counsel, and respectfully moves this Honorable Court to Dismiss the Indictment. In support thereof, Mr. Dyer states as follows:

## PROCEDURAL HISTORY

On February 1, 2023, the Government obtained a one-count indictment charging Mr. Dyer with Unlawful Possession of a Ammunition by a Felon, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1). Specifically, the Government alleged that on or about January 11, 2023, Mr. Dyer knowingly possessed ammunition with the knowledge that he had previously been convicted of Trafficking of Schedule W Drug and Illegal Possession of a Firearm or Crossbow –both punishable by more than a year in prison. *Id*.

Mr. Dyer was arraigned on March 24, 2023. (ECF No. 9). At that time, he entered a plea of not guilty. *Id*.

**ARGUMENT**

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court clarified that the Amendment is an individual right, that "guarantee[s] all citizens the right to possess and carry weapons in case of confrontation" and is unconnected to militia service. 554 U.S. 570, 592 (2008). However, this right is not unqualified. "[T]he right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010). In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, the Supreme Court outlined the framework for determining what conduct the Government may lawfully proscribe. 142 S. Ct. 2111, 2129–30 (2022). Specifically, the Court held that the standard for determining whether a regulation was permissible was:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id*. Moreover, in *Bruen*, the Court explicitly rejected the use of "means-end scrutiny,"[1] previously employed by lower courts in analyzing constitutional challenges to gun regulation. *Id*. at 2127 ("Despite the popularity of this two-step approach, it is one step too many."). Post *Bruen*, where a government regulation is subject to challenge on Second Amendment grounds, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bar arms." *Id*.

In this case, possession of a firearm by Mr. Dyer is conduct plainly contemplated by the clear text of the Second Amendment and thus, presumptively protected. As the Government cannot

---

[1] "Means-end scrutiny" allows "judges to assess the costs and benefits of firearms restrictions" in a Second Amendment analysis. *Id*. at 2129.

meet its burden in demonstrating a historical tradition of dispossessing individuals convicted of non-violent felonies from possessing guns, the indictment must be dismissed.

## I. The Second Amendment's Plain Text Covers Possession.

Applying *Bruen*'s standard, the Second Amendment's plain text covers the "possess[ion]" of a firearm that § 922(g)(1) criminalizes. 18 U.S.C. § 922(g)(1). The term "'[k]eep arms' was simply a common way of referring to possessing arms." *Heller*, 554 U.S. at 583.

Mr. Dyer is one of "the people" under the Second Amendment's plain text. *See Heller*, 554 U.S. at 581 (noting that Second Amendment right "belongs to all Americans"); *id*. at 580 (quoting prior decision describing "the people" as the "class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community"); *see also, e.g.,* U.S. Const. amend. I (using "the people" in Assembly-and-Petition Clause); U.S. Const. amend. IV (using "the people" in Search-and-Seizure Clause). *Bruen* reiterates that the Second Amendment guarantees to "all Americans" the right to keep and bear arms. 142 S. Ct. at 2156 (quoting *Heller*, 554 U.S. at 581); *United States v. Daniels*, 2023 U.S. App. LEXIS 20870, *10 (5th Cir. 2023) (illegal marijuana user part of the political community).

Because the Second Amendment's plain text covers Mr. Dyer's conduct, the Second Amendment "presumptively protects" him from prosecution. *Bruen*, 142 S. Ct. at 2129–30

## II. Section 922(g)(1), as Applied to Mr. Dyer, is Not Consistent with the Nation's Historical Tradition of Firearm Regulation.

In this case, the Government cannot meet its burden in establishing that § 922(g)(1), as applied to Mr. Dyer, is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30. As discussed above, post-*Bruen*, to uphold application of § 922(g)(1) to Mr. Dyer, the prosecution must establish a historical "tradition"—a robust record of regulations

demonstrating an accepted and enduring restriction on the Second Amendment right. *See, e.g., id*. at 2156 (demanding a "broad tradition," not "outlier" regulations). And because § 922(g)(1) "addresses a general societal problem that has persisted since the 18th century," *Bruen* instructs that "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id*. at 2131. So too "if earlier generations addressed the societal problem, but did so through materially different means." *Id*. The inquiry may also turn upon "how" and "why" historical regulations burdened the Second Amendment right. *Id*. at 2132–33.

Since 1961, individuals convicted of crimes punishable by more than a year of imprisonment have generally been prohibited from possessing firearms. *Range v. AG United States*, 69 F.4th 96, 107 (3rd Cir. 2023) *citing* An Act To Strengthen The Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961). However, "18 U.S.C. § 922(g)(1), is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011).[2] Its earlier iteration, the Federal Firearms Act of 1938, did not distinguish between misdemeanors and felonies, but rather, limited its prohibition to those convicted of violent crimes such as murder, rape, kidnapping, and burglary. *Id*.

Moreover, "[f]ounding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting); *see, e.g., id*. at 453–64 (surveying history); *Heller*, 670 F.3d at 1253 ("[S]tates did not start to enact [felony-based prohibitions on possession] until the early 20th century."); *Folajtar v. Att'y Gen. of U.S.*, 980 F.3d 897, 914 (3rd Cir. 2020) (Bibas, J., dissenting) ("[T]he issue of

---

[2] In *Booker*, the First Circuit considered a challenge to 18 U.S.C. § 922(g)(9). In upholding the statute, it applied the "means-end scrutiny" now impermissible under *Bruen*.

disarming felons is open. Precedent does not settle its historical limits. Rather, we must analyze the history ourselves and ask: Were all felons, dangerous and non-dangerous alike, equally excluded from the Second Amendment? No, they were not."); *United States v. McCane*, 573 F.3d 1037, 1048 (10th Cir. 2009) (Tymkovich, J., concurring) ("[M]ore recent authorities have not found evidence of longstanding dispossession laws.").[3]  In other words, while there may be some historical support for disarmament of individuals convicted of certain violent offenses, it is insufficient to support the breadth of § 922(g)(1)'s modern day sweep. *Lange v. California,* 141 S. Ct. 2011, 2023 (2021) (noting "felony category then was a good deal narrower than now"). For example, in *Range v. AG United States,* an en banc panel of the Third Circuit enjoined enforcement of § 922(g)(1) against Mr. Range where it held the Government had not met their burden in proving our Nation has a history and tradition of stripping individuals with felony false statement convictions, like Mr. Range, of their right to possess a gun. 69 F.4th at 98. Similarly, in *United States v. Bullock*, the Court dismissed a criminal indictment when the prosecution failed to establish a historical tradition supporting to the criminalization of Mr. Bullock's gun possession, despite his prior felony conviction. 2023 U.S. Dist. LEXIS 112397 (S.D. Miss. June 28, 2023).

"When it comes to interpreting the Constitution, not all history is created equal." *Bruen*, 142 S.Ct. at 2136. Courts must "guard against giving post-enactment history more weight than it can rightly bear." *Id*. In the United States, as drug regulation only began in 19th century there is little in the way of long-standing tradition of dispossessing those convicted of drug related offenses. *See Daniels,* 2023 U.S. App. LEXIS 20870 at *13 n.9 (5th Cir. 2023) (*citing* Richard J. Bonnie & Charles H. Whitebread, II, *The Forbidden Fruit and the Tree of Knowledge: An Inquiry*

---

[3] Scholars, too, have concluded that no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms. C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun*?, 32 Harv. J.L. & Pub. Pol'y 695, 698 (2009) (observing that such prohibitions have their origins in the twentieth century).

*into the Legal History of American Marijuana Prohibition*, 56 Va. L. Rev. 971, 985–986 (1970). Federal drug regulation did not begin in earnest until 1914 with the passage of the Harrison Narcotics Tax Act which imposed federal oversight of the legal trade in narcotic drugs and imposed criminal penalties for illicit trafficking in narcotics. Joanne R. Lame, *The Controlled Substances Act (CSA): A Legal Overview for the 118th Congress,* Congressional Research Service 1, 2 (Jan. 19, 2023) https://sgp.fas.org/crs/misc/R45948.pdf; Lisa N. Sacco, *Drug Enforcement in the United States: History, Policy, and Trends,* Congressional Research Service 1, 2 (Oct. 2, 2014) https://sgp.fas.org/crs/misc/R43749.pdf (while recreational and medical use of drugs, including cocaine and opium, were popular in the 19th century, the federal government was not involved in restricting or regulating their distribution and use). Given this limited history of drug criminalization, there is similarly little in the way of long-standing tradition of dispossessing those with previous convictions for drug related offenses. *See Daniels,* 2023 U.S. App. LEXIS 20870 at *33 (finding defendant's conviction under § 922(g)(3) to be inconsistent with "history and tradition" of gun regulation).

Because the prosecution cannot establish the requisite historical tradition, §922(g)(1) is unconstitutional as applied to Mr. Dyer.

## CONCLUSION

In this case, the Government cannot meet its burden in demonstrating a long-standing history and tradition of barring individuals previously convicted of non-violent felony offenses from possessing firearms or ammunition. Thus, prosecution of Mr. Dyer under § 922(g)(1) is an impermissible infringement on his protected Second Amendment rights.

WHEREFORE, for the foregoing reasons, Mr. Dyer respectfully request this Court grant his Motion to Dismiss the Indictment.

Dated this 28th day of August 2023 at Portland, Maine.

Respectfully submitted,

*/s/ Grainne Dunne*

_____
Grainne Dunne
*Attorney for Defendant*
HALLETT WHIPPLE WEYRENS
6 City Center, Suite 208
P.O. Box 7508
Portland, Maine 04112-7508
PH: 207-775-4255
*gdunne@hww.law*

'

**CERTIFICATE OF SERVICE**

I, **Grainne Dunne**, attorney for **Tyson Dyer** hereby certify that I have served electronically, a copy of this motion upon **Assistant United States Attorney Jonathan Nathans, Esq.**, via the ECF system.

Dated: August 28, 2023                                    /s/ *Grainne Dunne*

                                                                Counsel for the Defendant